UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

TWO FARMS, INC.,

                   Plaintiff,

      - against –

GREENWICH INSURANCE COMPANY,

                  Defendant.
————————————————————————————————

12 Civ. 0050 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

    These are cross-motions for partial summary judgment in a dispute between the plaintiff, Two Farms, Inc., ("Two Farms"), and the defendant, Greenwich Insurance Company ("Greenwich"). The dispute concerns the meaning of a provision in an insurance policy that Greenwich issued to Two Farms. The clause at issue limits to $1,000,000 coverage for losses sustained because of underground storage tanks and associated piping that Two Farms uses at its gas stations. Greenwich contends that the limitation applies to losses that Two Farms incurred because of a gasoline discharge at one of its facilities and thus that Greenwich fulfilled its obligations under the policy by paying $1,000,000 to Two Farms. Two Farms contends that the limitation is inapplicable to the over $5,000,000 in losses allegedly sustained because of the gasoline discharge. Two Farms thus seeks a judgment in its favor and against Greenwich for at least

$4,000,000, the remaining difference that Two Farms claims is owed under the policy.

Greenwich moves for summary judgment dismissing all claims under Rule 56 of the Federal Rules of Civil Procedure. Two Farms cross-moves for partial summary judgment on the issue of liability under the same rule. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. For the reasons explained below, the provision at issue unambiguously limits the plaintiff's coverage to $1,000,000 for the loss at issue in this dispute. Accordingly, the plaintiff's motion for partial summary judgment is **denied** and the defendant's motion for summary judgment is **granted**.

I.

The following facts are undisputed unless otherwise indicated.

A.

Greenwich is a Delaware corporation with its principal place of business in Stamford, Connecticut. Two Farms is a Maryland corporation with its principal place of business in Baltimore, Maryland. Two Farms does business under the name Royal Farms and owns a network of gas stations and convenience stores, as well as a dairy production plant in Maryland.

B.

In April 2008, Two Farms purchased from Greenwich Pollution and Remediation Legal Liability Policy No. PEC000906403 ("the Policy"). (Pl.'s Rule 56.1 Stmt. at ¶ 4; Def.'s Resp. to Pl.'s Rule 56.1 Stmt. at ¶ 4.) The Policy was effective from April 16, 2008, through April 16, 2010. (Certification of Charles Stoia ("Stoia Cert.") Ex. C ("2008 Policy").) The Policy provides coverage for pollution conditions and remediation expenses for such conditions "on, at, under, or emanating from the location(s)" specified in the Policy's Pollution Legal Liability Schedule and Remediation Legal Liability Schedule. (2008 Policy at 1.) Two Farms's facility at 7950 Pulaski Highway in Baltimore, Maryland (the "Pulaski Highway Facility") is listed on both schedules. (2008 Policy at Endorsement 4.)

Although the Policy covers losses arising from pollution conditions and remediation expenses, it enumerates fourteen exclusions from coverage. (2008 Policy at 4-7.) Several of the exclusions also contain exceptions that restore some or all of the excluded coverage. (See, e.g., 2008 Policy at 5, 7.)

This action pertains to Exclusion 13—the Underground Storage Tank(s) Exclusion (the "UST Exclusion")—to the 2008 Policy. The UST Exclusion excludes coverage for claims "based upon or arising out of the existence of any underground storage tank(s) and associated piping." (2008 Policy at 4, 7.)

However, the UST Exclusion also contains an exception, which
provides in relevant part that the Exclusion "does not apply to
the underground storage tank(s) or associated
piping . . . listed in the Underground Storage Tank(s) and
Associated Piping Schedule, if any." (2008 Policy at 7.)  The
underground storage tank and associated piping at the Pulaski
Highway Facility is listed on the Underground Storage Tank(s)
and Associated Piping Schedule. (2008 Policy at Endorsement
10.)

    The 2008 Policy also contains Endorsement 7, titled the
"Dedicated UST Sublimit Endorsement" (the "UST Sublimit").  The
UST Sublimit applies annual sublimits of liability "to all
Underground Storage Tanks and Associated Piping scheduled to
[the] Policy." (2008 Policy at Endorsement 7.)  The UST
Sublimit caps the coverage amount for each loss or remediation
expense at $1,000,000 and caps the total coverage for such
expenses at $5,000,000. (2008 Policy at Endorsement 7.)  The
term "underground storage tanks and associated piping" is not
defined in the UST Sublimit or anywhere else in the Policy.


                            C.

     In September of 2008, after the Policy issued, Two Farms
requested through its insurance broker that Greenwich provide
quotes for additional coverage for leaks from its underground

                             4

storage tanks.  (Stoia Cert. Ex. U.)  In response, Greenwich provided Two Farms with four quotes.  (Stoia Cert. Ex. U.)  One of the offered quotes would have increased the UST Sublimit to $5,000,000 for each pollution condition or remediation expense, while leaving the annual sublimit at $5,000,000.  (Stoia Cert. Ex. U.)  Another would have increased the UST Sublimit to $10,000,000 for each pollution condition and remediation expense and also increased the yearly sublimit on liability to that amount.  (Stoia Cert. Ex. U.)  Two Farms rejected all four quotes, electing not to upgrade its coverage.  (Stoia Cert. Exs. Z, AA.)

In December of 2009, Two Farms discovered that thousands of gallons of gasoline had been discharged into the area surrounding its Pulaski Highway Facility (the "Discharge"). (Second Am. Compl. At ¶ 11.)  The Discharge was caused at least in part by a defective "O-Ring."  (Pl.'s Rule 56.1 Stmt. at ¶ 17; Def.'s Resp. to Pl.'s Rule 56.1 Stmt. at ¶ 17.)  The O-Ring is a component of the submersible turbine pump, a device that draws gasoline out of an underground storage tank ("UST"). (Ex. 2 to Pl.'s Mem. Supp. Pl.'s Mot. for Summ. J. at 5.)  The O-ring is located in a "containment sump" that sits on top of an UST.  (Stoia Cert. Ex. B.)  In this case, the defective O-Ring permitted gasoline to leak into the containment sump.  (Pl.'s Rule 56.1 Stmt. at ¶ 17; Def.'s Resp. to Pl.'s Rule 56.1 Stmt.

at ¶ 17.)  Gas then leaked from the containment sump into the ground because of a loose electric conduit coupling connection. (Pl.'s Rule 56.1 Stmt. at ¶ 18; Def.'s Resp. to Pl.'s Rule 56.1 Stmt. at ¶ 18.)  Two Farms alleges that the absence of leak detection equipment in the containment sump also proximately caused the Discharge.  (Pl.'s Rule 56.1 Stmt. at ¶ 21.)

D.

Two Farms filed with Greenwich an insurance claim for the losses and expenses that resulted from the Discharge at the Pulaski Highway Facility, losses which now allegedly exceed $5,000,000.  (Second Am. Compl. ¶ 14-15.)  To settle the claim, Greenwich paid Two Farms $1,000,000.  (Second Am. Compl. ¶ 16.)[1] Greenwich maintained that because of the UST Sublimit, it was not required to make any additional payments under the Policy. (Second Am. Compl. ¶ 16.)  Two Farms, believing that the UST Sublimit was inapplicable to the losses sustained at the Pulaski Highway facility, filed this action and now seek damages of at least $4,000,000.  (Second Am. Compl. ¶ 22.)

---

[1] Greenwich also paid Two Farms $250,000 to cover legal expenses arising from the Discharge.  (Second Am. Compl. ¶ 16.)

E.

After Two Farms commenced this action on January 4, 2012, Greenwich filed a motion to dismiss the Complaint and Two Farms was granted leave to file an amended complaint. (Stipulation Regarding Amended Complaint, Apr. 10, 2012.) After Two Farms filed its Amended Complaint, the parties made pre-discovery motions for summary judgment and partial summary judgment. Those motions were denied on January 15, 2013. (Order, Jan. 15, 2013.) Two Farms then filed a Second Amended Complaint and the parties completed discovery. Greenwich now moves for summary judgment on all claims, and Two Farms moves for partial summary judgment on the issue of liability.

II.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty,

in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.

1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).  If there are cross-motions for summary judgment, the Court must assess each of the motions and, drawing all reasonable inferences against the party whose motion is under consideration, determine whether either party is entitled to judgment as a matter of law.  Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010).


                                III.

     The Policy must be interpreted under New York law because it contains a New York choice of law provision.  (2008 Policy at 11.)  "Under New York law, insurance policies are interpreted according to general rules of contract interpretation."  Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 99 (2d Cir. 2012).  Courts must "give effect to the intent of the parties as expressed in the clear language of their contract."  Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir. 2012).  Accordingly, summary judgment on the meaning of an insurance policy is appropriate when the terms of a policy are unambiguous.  Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).

     "The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide."  Law

Debenture Trust, 595 F.3d at 465-66 (collecting cases); accord

In re Prudential Lines Inc., 158 F.3d 65, 77 (2d Cir. 1998)

(citation omitted).  Policy terms are unambiguous where they

provide "a definite and precise meaning, unattended by danger of

misconception in the purport of the contract itself, and

concerning which there is no reasonable basis for a difference

of opinion."  Olin, 704 F.3d at 99 (citation and internal

quotation marks omitted).  Where, on the other hand, contract

terms are "capable of more than one meaning when viewed

objectively by a reasonably intelligent person who has examined

the context of the entire integrated agreement and who is

cognizant of the customs, practices, usages and terminology as

generally understood in the particular trade or business," the

contract terms are ambiguous and summary judgment is

inappropriate.  Id. (citation and internal quotation marks

omitted).  "[W]here consideration of the contract as a whole

will remove the ambiguity created by a particular clause, there

is no ambiguity."  Law Debenture Trust, 595 F.3d at 467 (quoting

Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 300 (2d Cir.

1996)); see also Hudson-Port Ewen Assocs., L.P. v. Kuo, 578

N.E.2d 435, 435 (N.Y. 1991).

        "If a contract is unambiguous, courts are required to give

effect to the contract as written and may not consider extrinsic

evidence to alter or interpret its meaning."  Consarc Corp. v.

Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993);

accord Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309

F.3d 76, 83 (2d Cir. 2002); W.W.W. Assocs., Inc. v.

Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990).  If the meaning

of contractual language is otherwise plain, the language "does

not become ambiguous merely because the parties urge different

interpretations in the litigation." Law Debenture Trust, 595

F.3d at 467 (collecting cases).  Instead, each party's

interpretation must be reasonable.  Id.  An interpretation is

not reasonable if it strains the policy language "beyond its

reasonable and ordinary meaning." Id. (citing Bethlehem Steel

Co. v. Turner Constr. Co., 141 N.E.2d 590, 593 (N.Y. 1957)).


                              A.

     The issue in this case is the amount of coverage to which

Two Farms is entitled under the Policy for losses it incurred as

a result of the Discharge at the Pulaski Highway Facility.  The

Policy provides coverage for pollution conditions and

remediation expenses for such conditions.  That coverage is

limited by the UST Exclusion, which precludes coverage for all

claims "based upon or arising out of the existence of any

underground storage tank(s) and associated piping." (2008 Policy

at 4,7.)  However, the UST Exclusion contains an exception that

restores coverage for the "underground storage tank(s) or

                              11

associated piping . . . listed in the Underground Storage

Tank(s) and Associated Piping Schedule . . ."[2]  (2008 Policy at

7, Endorsement 10.)  There is no dispute that the Underground

Storage Tanks and Associated Piping at the Pulaski Highway

Facility were on the attached schedule.[3]  Under the Policy,

coverage is also limited by the UST Sublimit, which applies "to

all Underground Storage Tanks and Associated Piping scheduled to

[the] Policy" and caps the coverage amount for "each loss or

remediation expense" at $1,000,000.  (2008 Policy at Endorsement

7.)

     Greenwich argues that the broad language of the UST

Exclusion is applicable to the Discharge, and that coverage for

the Discharge can be restored under the exception to the UST

Exclusion only if the term "underground storage tanks and

associated piping" is construed to include the equipment that

malfunctioned at the Pulaski Highway Facility.  While Greenwich

admits that the term "underground storage tanks and associated

piping" should be construed to restore coverage, it maintains

---

[2] The parties agree that, although the introduction to the UST
exception refers to "underground storage tank(s) or associated
piping," and then refers to the "Underground Storage Tank(s) and
Associated Piping Schedule," (emphasis added in both
quotations), there is no significance to the use of the term
"or" rather than "and."  Therefore, this opinion will refer to
the term "underground storage tanks and associated piping."
[3] While several underground storage tanks at the Pulaski Highway
Facility appear on the Schedule, it is undisputed that the
Discharge emanated from only one.

that the term must have the same meaning when used in the UST Sublimit, and thus that the UST Sublimit unambiguously limits to $1,000,000 Greenwich's liability for the losses that Two Farms incurred as a result of the Discharge.

Two Farms argues that the UST Sublimit should be interpreted independently of the UST Exclusion and its attendant exception and that so interpreted the UST Sublimit is an ambiguous liability limiting provision that must be construed against Greenwich, the insurer. Two Farms's argument is unpersuasive.

1.

Greenwich correctly argues that the broad UST Exclusion applies to the losses that Two Farms sustained because of the Discharge. Under New York law, Greenwich, the insurer, "bear[s] the burden of proving that an exclusion [to insurance coverage] applies." Ment Bros., 702 F.3d at 121. Accordingly, Greenwich must demonstrate that the UST Exclusion is applicable to the Discharge at the Pulaski Highway Facility.

The UST Exclusion provides that Greenwich is not liable for any claims "based upon or arising out of the existence of any underground storage tank(s) and associated piping." (2008 Policy at 4, 7.) It is well settled that under New York law the terms "arising out of" and "based upon" must be construed broadly.

13

See, e.g., Liberty Mut. Ins. Co. v. Tap Elec. Contracting Serv., Inc., 475 F. Supp. 2d 400, 409 (S.D.N.Y. 2007) (citations omitted).  When the phrases "arising out of" or "based upon" appear in an insurance policy, courts must apply a "but for" test to determine liability.  See, e.g., Jewish Cmty. Ctr. of Staten Island v. Trumbull Ins. Co., -- F. Supp. 2d --, No. 09 Civ. 2028, 2013 WL 3936204 at *9 (E.D.N.Y. July 22, 2013); Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd., 668 N.E.2d 404, 405 (N.Y. 1996) (citing U.S. Underwriters Ins. Co. v. Val-Blue Corp., 647 N.E.2d 1342 (N.Y. 1995)).

Courts interpreting contracts pursuant to New York law are required to give each word and phrase in a contract its plain meaning and avoid rendering the terms or provisions of a contract superfluous.  See, e.g., LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 206 (2d Cir. 2005); Shaw Grp., Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003).  The UST Exclusion states that Greenwich is not liable for any claims arising out of or based upon "the existence" of any underground storage tanks and associated piping.  As a result, the proper inquiry in this case is whether the Discharge could have occurred but for the existence of any underground storage tanks and associated piping.  See Law Debenture Trust, 595 F.3d at 468 ("[C]ourts may not by construction add or excise terms . . . and thereby make a new contract for the parties

14

under the guise of interpreting the writing." (quoting <u>Bailey v.</u>
<u>Fish & Neave</u>, 868 N.E.2d 956, 959 (N.Y. 2007)).

The parties agree that the Discharge was caused by defects
in the containment sump, a device that sits above the
underground storage tank.  More particularly, there was a pinch
in the "O-Ring," a component of the check valve on the
submersible turbine pump that pulls gasoline from the
underground storage tank.  (Ex. 2 to Pl.'s Mem. Supp. Pl.'s Mot.
for Summ. J. at 5.)  The "O-Ring" is located in the containment
sump, and the plaintiff alleges that the gasoline drained out of
the containment sump through an electric conduit coupling
connection and into the surrounding soil because the electrical
connection was not tight.  (Pl.'s Rule 56.1 Stmt. at ¶ 18;
Def.'s Resp. to Pl.'s Rule 56.1 Stmt. at ¶ 18.)  The plaintiff
also alleges that the leakage would not have occurred if there
had been operable leak detection equipment in the containment
sump.

Greenwich correctly argues that the broad UST Exclusion
applies to the Discharge.  This is so because it is clear that
the Discharge could not have occurred but for the "existence" of
an underground storage tank and associated piping, given that
the sole function of the containment sump was to contain the
equipment used to transfer the gasoline from the underground
storage tank to the associated piping.  The equipment that

15

caused the Discharge would be entirely unnecessary if Two Farms did not have the underground storage tank and associated piping to which that equipment was attached.  Accordingly, the Discharge arose out of or was based on the existence of the underground storage tank and associated piping and the broad UST Exclusion is applicable in this case.

2.

Because the UST Exclusion applies to the losses that Two Farms sustained as a result of the Discharge, Two Farms is entitled to coverage for those losses only if coverage is restored by the exception to the UST Exclusion.  Greenwich argues correctly that coverage for the Discharge can be restored under the exception to the UST Exclusion only if the term "underground storage tanks and associated piping" is construed to include the equipment that malfunctioned at the Pulaski Highway Facility.

The exception provides that the exclusion does not apply to specifically listed "underground storage tanks and associated piping" such as the underground storage tank and associated piping at the Pulaski Highway Facility.  Accordingly, the exception restores coverage for the losses that Two Farms suffered in this case only if the term "underground storage

tanks and associated piping" includes the equipment that proximately caused the Discharge.

Two Farms agrees that the exception to the UST Exclusion confirms that the Discharge in this case is covered by the Policy.  Because the parties agree that the exception to the UST Exclusion is applicable to this case—and because the exception can be applicable only if the equipment that malfunctioned in this case is included in the term "underground storage tanks and associated piping"—the term must be so construed.  Accordingly, the term "underground storage tanks and associated piping," as used in the exception to the UST Exclusion, has a definite and precise meaning concerning which there is no reasonable basis for a difference of opinion.  Olin, 704 F.3d at 99.


3.

Greenwich argues that any coverage restored pursuant to the exception to the UST Exclusion is necessarily subject to the UST Sublimit.  Two Farms replies that the scope of the UST Sublimit is ambiguous and thus that the UST Sublimit cannot be construed to limit liability.  The UST Sublimit provides that "[t]he following dedicated annual sublimit of liability shall apply to all Underground Storage Tanks and Associated Piping Scheduled to this Policy." (2008 Policy at Endorsement 7.)  The provision then specifies that the applicable sublimits are $1,000,000 for

17

each particular loss and $5,000,000 annually.  (2008 Policy at Endorsement 7.)  Whether the UST Sublimit restricts the plaintiff's right to recover damages in excess of $1,000,000 for the losses underlying this action depends on the meaning of the term "underground storage tanks and associated piping" as that term is used in the UST Sublimit.

Greenwich argues that the term as used in the UST Sublimit must be construed in the same way that it is used in the exception.  Greenwich points out that the term should be construed broadly because that broad construction is the only basis for Two Farms to bring itself within the exception to the exclusion and obtain any coverage at all.

In response, Two Farms asserts that the UST Sublimit should be interpreted independently of the exception and that Greenwich bears the burden of demonstrating that the UST Sublimit, which limits recovery, is applicable to its losses.  According to Two Farms, Greenwich has not satisfied that burden because the term "underground storage tanks and associated piping" can refer either to underground storage tanks and associated piping alone, or to underground storage tanks, associated piping, and other equipment that comprises the UST system.  Two Farms therefore argues that the term "underground storage tanks and associated piping" is ambiguous as used in the UST Sublimit, and concludes

that this ambiguity must be construed against Greenwich, the insurer.

The maxim that ambiguity should be construed against the drafter is inapplicable to an insurance policy when the policy is made clear by its terms and structure.  Atlantic Cas. Inc. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 253 (S.D.N.Y. 2013) (citing In re Prudential Lines Inc., 158 F.3d at 77).  In this case, the structure of the Policy makes plain that the term "underground storage tanks and associated piping" must be interpreted broadly.

The term "underground storage tanks and associated piping" must be interpreted broadly in order to effectuate the parties' intent that Two Farms receive coverage for losses incurred because of the Discharge; namely, losses that result from defects in the UST system.  This interpretation of the term "underground storage tanks and associated piping" is appropriately applied across provisions of the Policy because "a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons," and no countervailing reasons are apparent in this case.  Iroquois Master Fund, Ltd. v. Quantum Fuel Sys. Tech. Worldwide Inc., No. 13 Civ. 3860, 2013 WL 4931649, at *2 (S.D.N.Y. September 12, 2013) (quoting 11 Williston on Contracts § 32:6 (4th ed.); Cf. Cohen v. Chubb Indem. Ins. Co., 729

N.Y.S.2d 105, 106 (App. Div. 2011) ("The use of the same term to mean more than one thing in the same insurance policy invites confusion, especially where the alternative usage is unaccompanied by an explicit definition.")  The parties could have made clear that the term "underground storage tanks and associated piping" was intended to have distinct meanings in distinct provisions of their Policy by defining the term in each section, but the parties failed to do so.  Instead, the parties constructed a policy in which the term "underground storage tanks and associated piping" appears in the exclusion, the exception, and the UST Sublimit, without once suggesting the term should have a different meaning.

Moreover, the structure of the Policy contains no indication that the parties intended the term "underground storage tanks and associated piping" to have different meanings in the exception and the UST Sublimit.  To the contrary, the term as used in the UST Sublimit necessarily carries the same meaning as the term when used in the exception to the UST Exclusion.  The exception to the UST Exclusion provides that coverage is restored for "underground storage tank(s) and associated piping . . . listed in the Underground Storage Tank(s) and Associated Piping Schedule . . ." (2008 Policy at 7.)  The UST Sublimit provides that its restrictions are applicable to "underground storage tanks and associated piping"

listed in the same schedule.  (2008 Policy at Endorsement 7.)
Accordingly, the plaintiff's construction of the Policy requires
that the term "underground storage tanks and associated piping"
have different meanings in the exception and the UST Sublimit
even though the term is the same and the provisions refer to the
same schedule.  This reading is unreasonable because it strains
the policy language "beyond its reasonable and ordinary meaning"
and "distort[s] the meaning" of the terms that the parties
negotiated.  Law Debenture Trust, 595 F.3d at 467-68.

    The plaintiffs supply no reason for construing the term
"underground storage tanks and associated piping" differently in
the exception and the UST Sublimit.  Indeed, the structure of
the Policy makes it clear that the terms should be construed in
the same way.  The exception allows coverage for damages from
"underground storage tanks and associated piping," which would
otherwise be excluded, but the coverage that was added back by
the exception was limited by the UST Sublimit which used exactly
the same term.[4]  Once the term underground storage tanks and

---

[4] On the parties' pre-discovery motions for summary judgment and
partial summary judgment, the Court found the term "underground
storage tanks and associated piping" as used in the UST Sublimit
ambiguous because the term was not defined in the Policy and
because the parties each offered apparently reasonable
explanations of the term's meaning.  However, when the parties
argued their initial motions for summary judgment, the parties
focused narrowly on the meaning of the term "underground storage
tanks and associated piping" without fully contextualizing their
use of the term.  In briefing their current cross motions for

associated piping is understood to include the equipment that
formed part of the underground storage tank and associated
piping, the UST Sublimit is unambiguous.  <u>Olin</u>, 704 F.3d at 99.
The UST Sublimit plainly limits to $1,000,000 Greenwich's
liability for losses that occur because of underground storage
tanks, associated piping, or other components of the UST system.
<u>See, e.g. Law and Debenture Trust</u>, 595 F.3d at 467 ("If
consideration of the contract as a whole will remove the
ambiguity created by a particular clause, there is no
ambiguity.")

Because the losses that Two Farms incurred as a result of
the Discharge were caused by defects in components of the UST
system at the Pulaski Highway Facility, and because the UST
Sublimit plainly limits to $1,000,000 Greenwich's liability for
losses that result from those components, Greenwich is not
liable for any damages beyond the $1,000,000 it has already paid
to Two Farms.  Accordingly, no genuine issues of material fact
remain and this action is appropriately resolved as a matter of
law.  Greenwich's motion for summary judgment on all claims is
**granted** and Two Farms's motion for partial summary judgment on
the issue of liability is **denied.**

_____

summary judgment, the parties have explained how the term
"underground storage tanks and associated piping" should be
understood in light of the entire Policy.

B.

The terms of the Policy are unambiguous and thus require that the Court give legal effect to the contract as written. See, e.g., Consarc Corp., 996 F.2d at 573; Int'l Multifoods Corp., 309 F.3d at 83; W.W.W. Assocs., Inc., 566 N.E.2d at 642. The extrinsic evidence developed by the parties in the course of discovery does not suggest a different result and indeed supports Greenwich's interpretation of the Policy.

Lee Schmelz, an insurance broker who helped procure the Policy for Two Farms, testified that he understood the term "underground storage tanks and associated piping" to refer to the entire UST system when he used the term in a summary of the Policy that he prepared for Two Farms.[5] (Stoia Cert. Ex. T

---

[5] The exact testimony was as follows:

    Counsel: I show you what has been marked as Exhibit 2 and ask you to take a look at that document, please.

    Lee Schmelz: Okay.

    Counsel: What is this?

    Lee Schmelz: This is a summary of insurance that I prepared.  This is part of a summary of insurance that I prepared for Two Farms.

    Counsel: Now, here it talks about –– now this is dated for the policy April 16, 2008, to April 16, 2010, correct?

    Lee Schmelz: Correct.

    *   *   *

("Schmelz Dep.") at 18-19.)   Two Farms also employed the

services of David Resch in procuring the Policy.   Resch

negotiated the Policy for Two Farms and testified that he

understood the term "underground storage tank and associated

piping" to have the same meaning when used in the exception to

the UST Exclusion and the UST Sublimit.[6]   (Stoia Cert. Ex. H

("Resch Dep.") at 96-97.)

---

> Counsel: [The summary] has underground storage tanks –
> pollution legal liability, remediation and contingent
> transportation.   And it has $1 million each loss; $5
> million annual total all loss.   Do you see that?
>
> Lee Schmelz: Yes.
>
> Counsel: Now, in regard to where this says, underground
> storage tank, were you referring to the shell of the
> underground storage tank itself or the entire underground
> tank system?
>
> Lee Schmelz: The entire system.

(Schmelz Dep. 18:6-19:19.)

[6]   The exact testimony was as follows:

> Counsel: Now, in the underground storage -- if you'll go to
> Endorsement 7.
>
> David Resch: Okay.
>
> Counsel: We've several times gone over the first sentence
> here which says that the following dedicated annual
> sublimit of liability shall apply to all underground
> storage tanks and associated piping scheduled to the
> policy.   At any time, did you have any understanding that
> the term "underground storage tanks and associated piping"
> used in that sentence meant anything different than
> "underground storage tank or associated piping" used in the
> exception to the UST exclusion?

The understandings of both Schemlz and Resch are properly imputed to Two Farms because both insurance brokers were acting on behalf of Two Farms.  See, e.g., Gelb v. Autom. Ins. Co. of Hartford, Conn., 168 F.2d 774, 775 (2d Cir. 1948); Ribacoff v. Chubb Grp. of Ins. Co., 770 N.Y.S.2d 1, 2 (App. Div. 2003). Accordingly, Two Farms was aware when the Policy was negotiated that the UST Sublimit limited to $1,000,000 the company's potential recovery for losses incurred because of the UST system.

## CONCLUSION

For the foregoing reasons, the UST Sublimit unambiguously limits to $1,000,000 coverage for the losses that Two Farms incurred as a result of the Discharge.  Therefore, the plaintiff's motion for partial summary judgment on the issue of liability is **denied** and the defendant's motion for summary judgment on all claims against it is **granted**.  The Clerk is

---

David Resch: I would say no.

Counsel: So when you assisted in the purchase of this policy, you understood that "underground storage tank or associated piping" as used in the exception to the UST exclusion meant the same thing as "underground storage tanks and associated piping" used in the first sentence of the dedicated UST sublimit endorsement?

David Resch: Yes.

(Resch Dep. 96:17-97:16.)

25

directed to enter judgment dismissing this action and closing

the case.   The Clerk is also directed to close all pending

motions.

**SO ORDERED.**

**Dated:     New York, New York**
**           January  6, 2014**                _____/s/_____
                                                   **John G. Koeltl**
                                        **United States District Judge**